J-S17043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.M., A MINOR, | : | IN THE SUPERIOR COURT OF |
| DATE OF BIRTH 03/05/2015 | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.M., NATURAL MOTHER | : | |
| | : | |
| | : | No. 1511 WDA 2015 |

Appeal from the Order August 19, 2015
in the Court of Common Pleas of McKean County Civil Division
at No(s): CP-42-DP-13-2015

BEFORE: GANTMAN, P.J., SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED MAY 11, 2016**

A.M. ("Mother") appeals from the order entered on August 19, 2015, adjudicating as dependent under the Juvenile Act, 42 Pa.C.S. § 6302, her female child, L.M. ("Child"), and ordering that the placement of Child would remain with the McKean County Children and Youth Services Agency ("CYS"). We affirm.

The trial court adequately and accurately summarized the factual background and procedural history of this appeal in its Pa.R.A.P. Statement filed on October 12, 2015, which accompanied its Amended Order of Adjudication. **See** Pa.R.A.P. 1925(a) Statement, 10/12/15, at 1-3 (unpaginated).

On March 19, 2015, CYS filed a dependency petition. On May 21, 2015, CYS filed an amended dependency petition. The trial court held

---

[*] Former Justice specially assigned to the Superior Court.

hearings on the petition on May 13, 2015, and July 20, 2015. In an order of adjudication dated July 20, 2015, and entered on August 19, 2015, the trial court adjudicated Child dependent under Section 6302(1) of the Juvenile Act, as without proper care or control, and continued Child's placement in foster care. The order relied on the boilerplate finding, set forth in the form order, that CYS made reasonable efforts to eliminate the need for removal of Child from the home, and that allowing Child to remain in the home would be contrary to her welfare.

On September 18, 2015, Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On October 12, 2015, CYS filed its Amended Order of Adjudication with the court's Pa.R.A.P. 1925(b) Statement.

On appeal, Mother raises four issues for our review:

A. Did the honorable court err when it failed to include any specific facts or findings in its order of August 12, 2015 to support its determination that the subject child was a "dependent" child?

B. Even if this Court considers the findings supplied belatedly in the trial court's amended order, did the honorable court err in its determination that the subject child was a "dependent" child pursuant to 42 Pa.C.S. § 6301 et seq.?

C. Did the honorable court err when it failed to include sufficient findings of fact in its original order of August 12, 2015 and its amended order of October 12, 2015 to support its determination that the evidence presented necessitated an out-of-home placement for the child?

D. Even if this Court considers the findings of fact supplied belatedly in the trial court's amended order, did the Honorable court err in its determination that the evidence presented necessitated and out-of-home placement?

Mother's Brief at 4.

Our standard of review is well-settled:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

Section 6302 of the Juvenile Act defines a "dependent child" as a child who, in relevant part:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk . . . .

42 Pa.C.S. § 6302.

In *In re G.T.*, 845 A.2d 870 (Pa. Super. 2004), this Court stated:

The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.

*Id.* at 872 (internal quotation marks and citations omitted). "The burden of proof in a dependency proceeding is on the petitioner to demonstrate by

clear and convincing evidence that a child meets that statutory definition of dependency." *Id.*

This Court further explained:

> Even after a child has been adjudicated dependent, however, a court may not separate that child from his or her parent unless it finds that the separation is clearly necessary. Such necessity is implicated where the welfare of the child demands that he [or she] be taken from his [or her] parents' custody.

*Id.* at 873 (internal quotation marks and citations omitted); *accord* 42 Pa.C.S. § 6351.

Instantly, we initially hold that the trial court adequately explained the procedural irregularities and breakdown in court operations, which did not prejudice Mother. Based upon the explanation in the trial court's Rule 1925(a) Statement, we discern no abuse of discretion by the trial court in concluding that Child presently, "is without proper parental care and control, subsistence, education as required by law, or other care or control necessary for h[er] physical, mental, or emotional health, or morals." 42 Pa.C.S. § 6302(1); *In re R.J.T.*, 9 A.3d at 1190; *In re G.T.*, 845 A.2d at 872-73. Further, we discern no abuse of discretion by the court in concluding that Child's welfare necessitates maintaining her placement out of Mother's home in foster care. *See In re R.J.T.*, 9 A.3d at 1190. Accordingly, for the reasons stated in the trial court's Rule 1925(a) Statement, we affirm the trial court order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/2016

IN RE THE INTEREST OF:

L▓▓▓ M▓▓

: IN THE COURT OF COMMON PLEAS OF

: McKEAN COUNTY, PENNSYLVANIA

: JUVENILE DIVISION

: DOCKET NO: CP- 42-DP- 13-2015

: FID: 42-FN-8-2015

## 1925(A) STATEMENT

A▓▓ A. M▓▓, Natural Mother in this dependency case, has filed a Notice of Appeal and a Concise Statement of Matters Complained of on Appeal. The court is filing this 1925(A) statement to address the assertions of error raised by Appellant / Mother in her 1925(B) Statement.

### FACTUAL BACKGROUND:

Appellant asserts that the court failed to include any specific findings of fact or findings in its July 20, 2015, order (docketed on August 19, 2015) in which the court found that L▓▓ M▓▓ is a dependent child. She is correct. Under the system established in McKean County for the preparation of dependency orders in McKean County the court prepares its order and findings and forwards them to Stacy Bair, administrative staff at McKean County Children and Youth, to place them in a form that allows submission of the Order into the Common Pleas Case Management System (CPCMS), and, in a form that contains all the required fields necessary for a dependency order. The findings and order are the courts – administrative staff simply plugs in the findings and order generated by the court into the required dependency form.

On August 12, 2015, the court, via an attachment to an e-mail, forwarded the following Findings and Order for this case to administrative staff for submission into a dependency form order:

### ADDITIONAL FINDINGS:

L▓▓ M▓▓ is an infant child with a date of birth of ▓▓▓, ▓▓. Her Mother is A▓▓M▓▓. Her Father is D▓▓ C▓▓. Mr. C▓▓ appeared at the May 13, 2015, hearing and indicted that he "wants to give up his parental rights." Therefore, the court finds that there is no possibility of Father providing adequate parental care and control for L▓▓ in the future.

Mother has an extensive history of drug and alcohol abuse / use. She is prescribed Methadone to treat her opiate addiction. L▓▓ was born addicted to Methadone and, therefore, required specialized medical care and monitoring. Shortly after she was born at the Bradford Regional Medical Center she was transferred to the DuBois Regional Medical Center for specialized care. Mother began Methadone treatments at the

Discovery House Clinic in Clearfield, PA. on February 2, 2015, which, of course, was when she was pregnant. The court finds Father's (D████ C███'s) testimony regarding Mother's drug use credible. Specifically, the court finds that: 1) Father and Mother have known each other for two or three years; 2) Mother and Father utilized drugs together on numerous occasions ("she used a lot. Crack and pills"); 3) Mother and Father utilized "crack and booze, pills;" 4) Father's recollection of when he and Mother last utilized drugs together was initially "June, July or August, 2014." However, he later indicated that it could have been "May, June or July, 2014;" 5) Mother utilized crack and alcohol while pregnant, telling Father during periods of mutual drug use "I am pregnant and it might be yours."

Because L███ was born addicted to methadone she had to undergo specialized care and monitoring for several weeks. She was given morphine and subsequently "weaned off of it."

Mother was asked to go to the DuBois Regional Medical Center and visit with L████ and "nest." Mother did not show for the first scheduled "nesting" visit on March 6, 2015. She told staff at the hospital that she had a "horrible day" and a "meltdown;" and, that she was "going to the Methadone clinic." Mother was then scheduled to "nest" with L████ on March 18, 2015. She did not appear for that visit. She asserted that she did not have a ride. On March 19, 2015, Mother appeared at DuBois Regional with her mother, L███'s maternal grandmother. Staff at the hospital smelled alcohol coming from the two and maternal grandmother appeared to be intoxicated. The two of them "did not appear to be lucid." Mother was asked to submit to a urine screen and it tested positive for "Methadone and Benzos." Maternal grandmother was also positive for controlled substances including THC and morphine. It appeared that maternal grandmother had driven to the hospital and Mother did not prevent her from having contact with L███. At one point maternal grandmother "passed out on the bed (of the hospital)."

On March 13, 2015, caseworker Danielle Little went to Mother's reported residence in Smethport, PA. Mother was residing with her Mother (maternal grandmother). When Caseworker Little pulled into Mother's residence a State Police cruiser immediately pulled in behind her. The State Police had received a call regarding an incident at the residence. When Caseworker Little and the trooper went to the door Mother opened the door and indicated that "someone has to get me out of here." She was hysterically crying. She was verbally fighting with her mother in the presence of the caseworker and the trooper. When caseworker asked Mother about the services that the baby would need Mother was not aware of what they would be. At that point Mother asked caseworker Little to take her to the YWCA. Mother did relocate to the YWCA. However, it appears that she thereafter relocated back to her Mother's residence.

The court finds that Mother has a significant drug and alcohol history and addiction. Although she is seeking treatment in the form of Methadone treatments, her recovery is still questionable and her current situation very unstable. Her home and living environment is in a state of confusion and turmoil. Her mother, L████'s maternal grandmother, also has significant drug and alcohol issues. It is harmful and unproductive – to the level of explosive – for Mother and L████ to be in contact with maternal grandmother. However, Mother does not have adequate housing and appears to be continuing a destructive relationship with her mother, L████'s maternal grandmother.

## ADDITIONAL ORDER:

L████ is found to be a dependent child. She shall remain in foster care. Mother shall obtain an updated drug and alcohol evaluation and follow through with any recommended treatment. Mother shall undergo drug screening to test for the presence of drugs and/or alcohol at least once a week. Mother shall sign any necessary releases for the Agency to obtain information regarding her drug and alcohol treatment and history as well as her mental health conditions, treatment and history. Mother shall attend all medical appointments for L████. A visitation schedule shall be established by the Agency. Since visits have been held since the initial dependency hearing and the Agency is indicating that they have gone well and they are requesting that they be expanded, at the discretion of the Agency visits can be expanded to 2 overnights a week with the dates and times at the discretion of the Agency. Mother's home shall be inspected before visits to assure that it is safe and that Mother has appropriate supplies. Mother shall provide medical documentation to support her assertion that she is medically prohibited from traveling certain distances to attend medical appointments, etc., for L████. This case shall be reviewed in approximately 60 days. All future proceedings to be held before the Juvenile Hearing Master.

Stacy Bair indicates that she prepared the order for signature and, since the findings were lengthy, she attached them to the order. The court (John H. Pavlock) does not recall if the Facts were included as an attachment when he signed the dependency order or if they had been separated or not included prior to signing. Regardless, when the order was filed the facts were not referenced in the order itself or attached. Therefore, the order was filed without any specific facts in it. Normally such an oversight would be discovered at a subsequent review hearing. However, since the court assigned the case to Juvenile Master Christa Schott following the entry of the Finding of Dependency, this oversight was not discovered until the matter was appealed.

The court fully understands Appellant's and her counsel's frustration with the dependency order in this case. It is obviously deficient. This was a mistake that shouldn't have happened and one the court apologizes for. However, L████ and all parties deserve to have this case addressed based on the reality of the situation and not on a procedural windfall due to

a clerical error - and the court's failure to catch an obvious mistake. Therefore, the court requests that the order in this matter be corrected to include the court's Findings made and intended to be filed of record at the time of the entry of the August 12, 2015, dependency order.[1]

The facts issued by the court clearly support a finding of dependency. The court found that: 1) Mother has a substantial and long standing drug dependency issue; 2) she failed to take advantage of bonding sessions with L███; 3) L███ was born addicted to Methadone; 4)Mother used illegal substances well pregnant; and, 5) Mothers current living arrangements and personal life is in a state of turmoil. Therefore, L███is currently without proper parental care and control.

WHEREFORE, the Facts previously issued by the court but inadvertently left out of the prior order should be considered by the Superior Court and the Appellants request for relief on appeal denied.

BY THE COURT:

JOHN H. PAVLOCK, P.J.

cc: Parents
c' Cys
D Fink
D Lang
S. Cottenberg-Shyfer
( 10/13/15 )

2015 OCT 12 PH 2: 46

---

[1] The court has prepared an Amended Order which includes the facts that were inadvertently left out when the initial order was filed. However, the court did not want to file that amended order until this 1925(a) Statement was filed and counsel was provided with an explanation of what had occurred.